[No. A045673. First Dist., Div. One. Apr. 12, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
SHELDON EDWARD WARREN, Defendant and Appellant.

## COUNSEL

Ozro William Childs for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEIN, J.**—Sheldon Edward Warren appeals from his conviction of possession of methamphetamine, claiming that the trial court erred in failing to suppress evidence obtained in a warrantless search.

### FACTS

Warren sought to send a package by means of the United Parcel Service (UPS). He took the package to a shipping and receiving business known as "Mr. Postman." The business is operated by Charles Alvarez. A "Right of Inspection" sign, posted in the business, informs customers that "The carrier reserves the right to open and inspect any package tendered to it for inspection." Warren told Alvarez that the package contained printed material and insured it for $100. Alvarez became suspicious because the package

was an odd weight for printed material and because "people don't insure printed matter for $100." He opened the package and discovered it to contain a white substance. Alvarez then contacted the investigating officer of affairs for UPS. The investigating officer contacted Officer Paul Sullivan of the Sonoma County Sheriff's Department. Officer Sullivan performed a "presumptive field test" on the substance at "Mr. Postman," which indicated that the substance was methamphetamine. Officer Sullivan took the substance to the crime lab for further analysis. It was later analyzed by a licensed forensic chemist who determined that the package contained approximately 28 grams of methamphetamine.

### Discussion

### I.

*The Search by Alvarez Did Not Violate the Fourth Amendment*

It is well settled that the "Fourth Amendment's prohibition against unreasonable search and seizure does not apply to searches by private citizens." (*People* v. *North* (1981) 29 Cal.3d 509, 514 [174 Cal.Rptr. 511, 629 P.2d 19]; *Walter* v. *United States* (1980) 447 U.S. 649, 657 [65 L.Ed.2d 410, 418, 100 S.Ct. 2395].) Warren concedes that Alvarez was a private citizen at the time he conducted the search but argues that, under *United States* v. *Walther* (9th Cir. 1981) 652 F.2d 788, 791, he was also acting as the government's agent and that the Fourth Amendment therefore was implicated. The court in *Walther* found, "While a certain degree of governmental participation is necessary before a private citizen is transformed into an agent of the state, *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny." (*Id.* at p. 791.) The relevant factors used in determining whether the governmental participation is significant, or de minimis, are "(1) the government's knowledge and acquiescence, and (2) the intent of the party performing the search." (*Id.* at p. 792.)

Warren points to evidence that Alvarez had once been a law enforcement officer, that he had opened packages on six or seven other occasions during a three-month period, that he had reported finding suspected illegal drugs, and that on several other occasions his reports had resulted in contact with the sheriff's office and court appearances. The evidence also disclosed, however, that Alvarez was not a paid informant used by the police, as was the case in *United States* v. *Walther* and, when he suspected that a package contained drugs, he did not contact the police but UPS. Whether a private citizen is acting as a de facto police officer is an issue of

fact and thus an issue for the trial court. (*People* v. *North, supra,* 29 Cal.3d at p. 513.) Here, the evidence supports the trial court's finding that Alvarez was acting as a responsible employee and on behalf of the mail companies, and not as the agent of the government.

II.

*The Police Were Not Required to Obtain a Warrant Before Determining the Contents of the Package*

As Warren concedes, when a suspicious substance has been discovered during a search by a private citizen, the Fourth Amendment permits a government agent, without first having obtained a search warrant, to test that substance to determine if it is contraband. First, insofar as the governmental search is nothing more than a reexamination of matter uncovered in a search by a private citizen, it involves no impermissible infringement of a privacy interest. "The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment." (*United States* v. *Jacobsen* (1984) 466 U.S. 109, 119-120 [80 L.Ed.2d 85, 98, 104 S.Ct. 1652].) Second, the additional intrusion of a field test designed to determine if the substance uncovered in the search is or is not an illicit drug also involves no infringement of the Fourth Amendment. "The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities. Indeed, this distinction underlies the rule that government may utilize information voluntarily disclosed to a governmental informant, despite the criminal's reasonable expectation that his associates would not disclose confidential information to the authorities. [Citation.] [¶] A chemical test that merely discloses whether or not a particular substance is cocaine [or here, methamphetamine] does not compromise any legitimate interest in privacy. This conclusion is not dependent on the result of any particular test. It is probably safe to assume that virtually all of the tests conducted under circumstances comparable to those disclosed by this record would result in a positive finding; in such cases, no legitimate interest has been compromised. But even if the results are negative—merely disclosing that the substance is something other than cocaine—such a result reveals nothing of special interest. Congress has decided—and there is no question about its power to do so—to treat the interest in 'privately' possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest." (*United States* v. *Jacobsen, supra,* 466 U.S. at pp. 122-123, fns. omitted [80 L.Ed.2d at pp. 100-101].)

■ Warren argues, however, that although the presumptive field test was not improper, the substance, determined in that search to be methamphetamine, could not be subjected to further analysis absent a search warrant. In *Jacobsen* the court found that there is no privacy interest in an illicit substance. It follows that no privacy right guaranteed by the Fourth Amendment is infringed by the search and seizure of a known illicit substance, and that the seizure and subsequent testing of the methamphetamine at issue violated no constitutional right.

*People* v. *Leichty* (1988) 205 Cal.App.3d 914 [252 Cal.Rptr. 669], cited by Warren, is inapposite. In that case a private search uncovered two bottles containing a liquid. Police officers performed a field test on the liquid which yielded inconclusive results. " 'The results indicated some sort of drug [legal or illegal] present, but they were not the results I expected for PCP or methamphetamine . . . .' " (*Id.* at p. 918.) The police thereafter took the bottles to the police department where, without benefit of a search warrant, they were further tested and found to contain methamphetamine. The Fourth Amendment was violated because the search which determined the illicit nature of the substance exceeded in scope the search made by the private citizen. In the present case, in contrast, the test which determined the illicit nature of the substance did not exceed the scope of the search by Alvarez.

As discussed, Warren could have had no privacy interest in the illicit drugs, and once the substance properly was found to be illicit, its subsequent seizure impinged upon no constitutional interest.

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied May 14, 1990, and appellant's petition for review by the Supreme Court was denied June 27, 1990.